**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| TROY ANTHONY SMOCKS, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 4:22-cv-1028-ALM-KPJ |
| THE UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant The United States of America's (the "Government")

Motion to Dismiss (the "Motion") (Dkt. 30). Plaintiff Troy Anthony Smocks ("Plaintiff") filed a

response (the "Response") (Dkt. 33), and the Government filed a reply (the "Reply") (Dkt. 35).

For the reasons that follow, the Court recommends the Motion (Dkt. 30) be **GRANTED**.

## I.  BACKGROUND

### A.  Factual Background

On January 5, 2021, Plaintiff traveled to Washington, D.C., and attended the "Stop the

Steal" political rally in support of President Donald J. Trump on January 6, 2021. Dkt. 1 at 6. The

rally turned into unrest and violence as attendees made their way onto the grounds of the Capitol.

*Id.* at 7–8. While present at the rally, Plaintiff posted two "politically inspired communications"

on his Parler social media account. *Id.* at 7. The first of these two posts stated as follows:[1]

---

[1] The Court takes judicial notice of Plaintiff's criminal case in the United States District Court for the Eastern District of Texas, *United States v. Smocks*, No. 21-mj-33. *See Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 15-cv-766, 2016 WL 4272412, at *2 (E.D. Tex. Aug. 15, 2016) ("[T]aking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment." (alteration in original) (quoting *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 993 (S.D. Tex. 2011)).



*United States v. Smocks*, 21-mj-33, Dkt. 13-1. The second of these two posts stated as follows:



*Id.*, Dkt. 13-2. Plaintiff contends that he was not present on the grounds of the Capitol on January 6, 2021. Dkt. 1 at 7.

Following the events of January 6, 2021, the Government began an investigation into what occurred. *See id.* at 9. On January 13, 2021, Federal Bureau of Investigation ("FBI") Special Agent Kendrick J. Chumak ("Special Agent Chumak") contacted leasing management for Plaintiff's residence and began surveilling Plaintiff. *Id.* at 10. On January 14, 2021, Detective Sergeant Jeff Janczyk of the D.C. Metropolitan Police Department obtained a criminal complaint and an arrest warrant (the "Arrest Warrant") against Plaintiff in the District Court for the District of Columbia. *Id.* at 10. Special Agent Chumak received the criminal complaint and the Arrest Warrant in the FBI Dallas Field Office and then obtained a search warrant (the "Search Warrant") (together with the Arrest Warrant, the "Arrest and Search Warrants") from the undersigned for Plaintiff's residence and the vehicles located thereon. *Id.* at 10–11.

On January 15, 2021, at approximately 6:35 a.m., federal agents with the FBI and Department of Homeland Security ("DHS") Joint Terrorism Task Force arrived at Plaintiff's residence in "unmarked civilian[-]type vehicles" and "one large[,] armored military grade . . . assault vehicle." *Id.* at 11. Plaintiff alleges that news media was present for the "pre-dawn attack." *Id.* Plaintiff further alleges that he was "assaulted" by the federal agents and "forced at gunpoint, . . . while being handcuffed from behind, to stand publically [sic] in the middle of his residential street, dressed only in boxer[-]style underwear, and against a thirty[-]four degree near freezing January temperature." *Id.* at 12. Plaintiff also alleges that federal agents used a "breach tool" against the front door of his residence and "ignit[ed] 'flash bang' grenades around the perimeter of . . . Plaintiff's home even after Plaintiff had already been secured in restraints." *Id.*

At approximately 7:00 a.m., Plaintiff was transported to the FBI Dallas Field Office and then to the United States Courthouse in the Eastern District of Texas, located in Plano, Texas, where Plaintiff was surrendered to the custody of the United States Marshals Service ("USMS"). *Id.* at 13–14.

Plaintiff alleges that "[a]t some point thereafter on January 15, 2021, the FBI trespassed upon the Plaintiff's residence where a number of items were subsequently removed from the residence without consent from . . . Plaintiff." *Id.* at 13. Plaintiff also alleges that "[a]t no time during the [Government's] actions against . . . Plaintiff, was a member from the Office of the Collin County, Texas Sheriff'[s Department], or Dallas Police Department made part of the [Government's] actions." *Id.*

On January 29, 2021, Plaintiff was transferred to the Eastern District of Oklahoma in preparation for his subsequent transfer to D.C., which occurred on March 25, 2021. *Id.* at 14. Plaintiff alleges that when he arrived in D.C., he was detained within a "prearranged special housing unit 'C2A' for January 6th related federal arrestees." *Id.* at 15. Plaintiff alleges that the C2A detention section contained "approximately three dozen white males that the [Government] publicly declared to be 'white supremacists' and 'extremist,'" and thus, this was "a dangerous or deadly environment for the Plaintiff, [a black man, ]in addition to severe mental anguish." *Id.* Plaintiff was released from the custody of the USMS in the District of Columbia on January 12, 2022. *Id.*

**B.    Procedural History**

On December 5, 2022, Plaintiff filed the Complaint (Dkt. 1) against the Government asserting thirty-five claims against four federal agencies—the FBI, DHS, USMS, and Department of Justice ("DOJ")—for a total $2,500,024,227.04 in damages. *See* Dkt. 1. The Complaint (Dkt. 1)

4

contains fourteen causes of action: personal property damage, assault, aggravated kidnapping, unlawful trespass, invasion of privacy, false imprisonment, burglary, mental anguish, intentional infliction of emotional distress, negligence, willful and wanton disregard for state and federal law, violation of Texas Election Code, violation of Texas and federal statutory laws, and creation of a dangerous or deadly environment. *See id.* On March 9, 2023, the Government filed the Motion (Dkt. 30), wherein it seeks to dismiss the Complaint (Dkt. 1) for lack of subject matter jurisdiction and failure to state a claim. Dkt. 30 at 7. Plaintiff filed the Response (Dkt. 33), and the Government filed the Reply (Dkt. 35).[2]

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Rule 12(b)(1) provides that a party may assert by motion the defense of lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

---

[2] Plaintiff filed the Objection to United States of America's Reply in Support of its Motion to Dismiss (Dkt. 36), wherein Plaintiff argues the Government was prohibited from filing the Reply (Dkt. 35) because "the pleadings were officially closed" and "[n]owhere within the Federal Rules of Civil Procedure, or within the Court's Local Rules is authorization given, allowing [the Government] to file a Reply after Plaintiff's Response has closed out the pleadings." Dkt. 36 at 2–3. Plaintiff is mistaken. The Eastern District of Texas Local Rules provide that "a party who has filed an opposed motion may serve and file a reply brief responding to the issues raised in the response within seven days from the date the response is served." LOC. R. CV-7(f). Thus, the Local Rules expressly authorize reply briefing in this instance. The Government did not, however, comply with the seven-day time limit. Instead, the Government filed the Reply (Dkt. 35) twenty-one days after the Response (Dkt. 33). *See* Dkts. 33; 35. The decision to consider an untimely filed reply is within the Court's sound discretion. *See Campmed Cas. & Indem. Co. v. Specialists on Call, Inc.*, No. 16-cv-452, 2017 WL 373463, at *2 n.1 (E.D. Tex. Jan. 26, 2017). Here, Plaintiff has not objected to the timeliness of the Reply (Dkt. 35), nor has he moved to have the Reply (Dkt. 35) stricken on this basis. *See* Dkt. 36. Moreover, Plaintiff has failed to comply with the Local Rules on numerous occasions and has been permitted to amend filings to comply with the Local Rules. *See* Dkts. 6; 11–12; 14–15; 21; 23. The Reply (Dkt. 35) is responsive to the arguments raised by Plaintiff in the Response (Dkt. 33). Accordingly, Plaintiff's objection to the Reply (Dkt. 35) is overruled.

The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss. *Id.* (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)) (internal quotation marks omitted). A claim of sovereign immunity is jurisdictional. *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 762 (5th Cir. 2023) (quoting *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming*, 281 F.3d at 161. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

A court must address a Rule 12(b)(1) jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *Braatz, L.L.C. v. Red Mango FC, L.L.C.*, 642 F. App'x 406, 408–09 (5th Cir. 2016) (per curiam) (citing *Ramming*, 281 F.3d at 161). Addressing Rule 12(b)(1) arguments first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

## B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex.

2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.    ANALYSIS

Each of Plaintiff's claims are brought pursuant to the Federal Tort Claims Act ("FTCA"). Dkt. 1 at 1. "[T]he United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." *Hebert v. United States*, 438 F.3d 483, 487 (5th Cir. 2006) (quoting *Smith v. Booth*, 823 F.2d 94, 96 (5th Cir. 1987)). "Sovereign immunity protects the United States from liability, and deprives the court of subject matter jurisdiction over the claims against it." *Id.* at 487–88 (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "The FTCA provides a limited waiver of sovereign immunity for certain tort claims against the United States." *Mendez v. Poitevent*, 823 F.3d 326, 334 (5th Cir. 2016) (citing

*In re Supreme Beef Processors, Inc.* 468 F.3d 248, 251–52 (5th Cir. 2006) (en banc)). "On those claims, the United States is liable 'in the same manner and to the same extent as a private individual under like circumstances.'" *Id.* (quoting 28 U.S.C. § 2674). "[T]he 'law of the place where the act or omission occurred' governs liability in FTCA cases." *Id.* (quoting 28 U.S.C § 1346(b)(1)).

"The FTCA waives sovereign immunity and permits suit against the United States for monetary claims sounding in state tort law that allege negligent or wrongful acts committed by government employees." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021) (citing *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010)); *see also* 28 U.S.C. § 2674. "This waiver, however, is subject to various exceptions which preserve the United States' sovereign immunity." *Id.* (citing *Spotts*, 613 F.3d at 566). The United States's sovereign immunity is specifically preserved for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Davila v. United States*, 713 F.3d 248, 256 (5th Cir. 2013) (quoting 28 U.S.C. § 2680(h)). However, this immunity is explicitly waived—"thereby providing an exception to the exception—for 'any claim arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution,' where such claims result from 'acts or omissions of investigative or law enforcement officers of the United States Government.'" *Id.* (quoting 28 U.S.C. § 2680(h)).

## A.    Subject Matter Jurisdiction

### 1.    Aggravated Kidnapping, Burglary, and Violation of Texas Election Code

In the Complaint (Dkt. 1), Plaintiff asserts claims for aggravated kidnapping against the FBI, DHS, and USMS; burglary against the FBI; and violations of Texas Election Code against the FBI, DHS, and DOJ. *See* Dkt. 1 at 16–22, 26. In the Motion (Dkt. 30), the Government argues

that "[k]idnapping, burglary, and violation of the Texas Election Code are criminal offenses in Texas, and there is no legislative indication that these offenses, even if proven, would give rise to civil liability." Dkt. 30 at 22. In the Response (Dkt. 33), Plaintiff argues that the FTCA's intentional torts exception creates a private right of action to pursue violations of criminal statutes as torts. Dkt. 33 at 24–25.

Plaintiff's argument is misplaced. The FTCA does not create a private right of action; "rather, it permits the United States to be held liable in tort by providing a limited waiver of sovereign immunity 'for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment.'" *Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016) (quoting *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)). Thus, the criminal statutes in question here must create a private cause of action under Texas law for Plaintiff to maintain claims for aggravated kidnapping, burglary, and violations of the Texas Election Code.

"A private cause of action may arise from a criminal statute only when there is a 'statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Gonzalez v. United States*, No. 14-cv-263, 2015 WL 13345624, at *6 (W.D. Tex. Sept. 14, 2015) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)). "A bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone" does not give rise to a private cause of action. *Cort*, 422 U.S. at 79–80. The statutes for aggravated kidnapping, Texas Penal Code § 20.04, and burglary, Texas Penal Code § 30.02, are nothing more than bare criminal statutes and thus, cannot give rise to a private cause of action. *Cf. Chase v. Nix*, No. 15-cv-258, 2016 WL 11668711, at *8 (W.D. Tex. May 27, 2016) (finding the plaintiff's kidnapping claim failed because the statute did not provide a private cause of action). Further, there is no statutory basis for inferring that the

criminal penalty provisions of the Texas Election Code provide for a private cause of action. *See Baca v. Sanchez*, 172 S.W.3d 93, 97 (Tex. App.—El Paso 2005, no pet.) (finding that a violation of the Texas Election Code does not create a private cause of action). Therefore, because the FTCA does not waive sovereign immunity with respect to Plaintiff's claims for aggravated kidnapping, burglary, and violations of the Texas Election Code, the Court recommends that these claims be dismissed without prejudice for lack of subject matter jurisdiction.

2.    **Willful and Wanton Disregard for State and Federal Law, Violation of Texas and Federal Statutory Law, and Creation of a Dangerous Environment**

In the Complaint (Dkt. 1), Plaintiff asserts claims for willful and wanton disregard for state and federal law against the FBI, DHS, USMS, and DOJ; violations of Texas and federal statutory law against the DHS and USMS; and creation of dangerous and deadly environment against the USMS and DOJ. *See* Dkt. 1 at 19, 21, 23–26. In the Motion (Dkt. 30), the Government argues that these claims "are simply not torts recognized by Texas law and are pleaded too vaguely to conceivably state a claim upon which relief can be granted." Dkt. 30 at 23. Plaintiff does not respond to the Government's argument regarding these claims.

"Plaintiffs have the burden to identify a basis for this Court's exercise of subject matter jurisdiction." *Canada v. U.S. Small Bus. Admin.*, No. 21-cv-91, 2021 WL 8442058, at *4 (W.D. Tex. Oct. 13, 2021) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)), *R. & R. adopted sub nom.*, *Canada v. Small Bus. Admin.*, 2021 WL 8442057 (W.D. Tex. Dec. 28, 2021). "[I]t is not the obligation of the Court to seek out authorities or legal theories that might support a party's claim for relief." *Id.* (citing *Harrison v. Oakland County*, 612 F. Supp. 2d 848, 859 (E.D. Mich. 2009)).

Plaintiff's claims for creation of dangerous and deadly environment against the USMS and DOJ are based upon the "state-created-danger" theory of liability under 42 U.S.C. § 1983. *See*

10

Dkt. 1 at 5 n.8; *see also Lester v. City of College Station*, 103 F. App'x 814, 815 (5th Cir. 2004) (discussing the state-created-danger theory of liability). Plaintiff cannot maintain a claim based upon a theory of liability recognized under § 1983 because Plaintiff has brought his cause of action pursuant to the FTCA, and the FTCA does not waive federal sovereign immunity for constitutional torts. *See F.D.I.C. v. Meyer*, 510 U.S.471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."). Accordingly, as the Government has not waived sovereign immunity with respect to Plaintiff's claims for creation of dangerous and deadly environment against the USMS and DOJ, the Court recommends that these claims be dismissed without prejudice for lack of subject matter jurisdiction.

Plaintiff's remaining claims for willful and wanton disregard for state and federal law against the FBI, DHS, USMS, and DOJ and violations of Texas and federal statutory law against the FBI, DHS, and DOJ are too vague for the Court to determine Plaintiff's basis for these claims, nor can the Court identify a potential basis in law for these claims. It is Plaintiff's burden to identify the basis under the FTCA for each of his claims. *See Canada*, 2021 WL 8442058, at *4 (dismissing the plaintiff's "return of monies seized from them" claim for lack of subject matter jurisdiction because it "is not in itself a claim"). Accordingly, the Court recommends that these claims be dismissed without prejudice for lack of subject matter jurisdiction.

### 3.    Exhaustion of Administrative Remedies

The Government argues that any claims asserted against the USMS and the assault and burglary causes of action against the FBI should be dismissed because "Plaintiff failed to exhaust administrative remedies with respect to these claims." Dkt. 30 at 10. First, regarding the USMS, the United States argues that Plaintiff failed to submit an administrative claim to the USMS. *Id.*

at 11. Second, regarding claims of assault and burglary, the United States argues that Plaintiff did not raise assault and burglary in the administrative claim he submitted to the FBI. *Id.* at 11–12.

### i.    Claims Asserted Against the USMS

The Government argues that Plaintiff failed to exhaust his administrative remedies because although Plaintiff mailed an administrative claim to the USMS, it was never received by the USMS. Dkt. 30 at 11. Plaintiff responds that he "exhausted his administrative remedy with the USMS by placing the Form-95 into the mail and custody of the United States Postal Service."[3] Dkt. 33 at 16.

Presentment of a claim to the appropriate federal agency is a "jurisdictional prerequisite" to filing suit under the FTCA. *Barber v. United States*, 642 F. App'x 411, 413 (5th Cir. 2016); *see also* 28 U.S.C. § 2675(a); 28 C.F.R. § 14.9. "The purpose of the notice requirement is to set forth sufficient facts to enable the government to investigate its potential liability and to conduct settlement negotiations." *Moon*, 2024 WL 374559, at *5 (citing *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994)). "Evidence of mailing does not show presentment under the FTCA." *Barber*, 642 F. App'x at 414 (cleaned up). "Rather, a claim is not presented until received." *Id.* (cleaned up). When a claim involves more than one federal agency, "an agency with which the claim is filed shall contact all other affected agencies." 28 C.F.R. § 14.2(b)(2); *see also Thomas v. United States*, No. 04-114, 2005 WL 757268, at *7 (E.D. La. Mar. 31, 2005) ("The plain language

---

[3] Plaintiff contends that the Government's arguments regarding receipt of the claims by the USMS are defeated by the mailbox rule. Dkt. 33 at 16. However, the mailbox rule is inapplicable here, as the FTCA requires actual receipt and the mailbox rule only "creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *See Hagner v. United States*, 285 U.S. 427, 430 (1932) (citation omitted). "As stated by the Ninth Circuit, the court should not 'accept [Plaintiff's] invitation to rewrite the [FTCA] and in effect repeal the regulation by holding that mailing alone is sufficient to meet the requirement that a claim be 'presented.'" *Moon v. United States*, No. 23-cv-371, 2024 WL 374559, at *5 (E.D. Tex. Jan. 30, 2024) (quoting *Bailey v. United States*, 642 F.2d 344, 347 (9th Cir. 1981)). Moreover, the presumption is rebutted when there is evidence that the document was not received, as is the case here. *See Geico Ins. Co. v. White*, 339 F. App'x 394, 396–97 (5th Cir. 2009) (quoting *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007)).

of subsection (b)(2) imposes an affirmative obligation on the government to contact 'all other affected agencies' and coordinate the investigation and determination of administrative tort claims that may involve more than one federal agency."), *aff'd*, 176 F. App'x 474 (5th Cir. 2006).

Here, Plaintiff attached the administrative claims and the certified mail receipts for the claims he sent to the DOJ, FBI, DHS, and USMS to the Complaint (Dkt. 1). *See* Dkts. 1-2–1-5. Although the claim addressed to the USMS never reached its destination, the claims sent to the DOJ, FBI, and DHS were received. *See id.* Further, the claim addressed to the DOJ specifically identified the USMS. *See* Dkt. 1-2 at 1. Pursuant to 28 C.F.R. § 14.2(b)(2), the DOJ, upon receiving an administrative claim alleging that the USMS was involved, had the affirmative obligation to contact the USMS and inform the USMS of the claims alleged against it. *See Thomas*, 2005 WL 757268, at *7.

Moreover, the USMS is a bureau within the DOJ and operates under the direction of the Attorney General. Presentment requires that the claim be presented to the "appropriate Federal agency." 28 U.S.C. § 2401. Under the FTCA, "the term 'Federal agency' includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States." 28 U.S.C. § 2671. Federal regulations have clarified that the "appropriate" federal agency is the one "whose activities gave rise to the claim." *See* 28 C.F.R. § 14.2(b)(1). Plaintiff presented his claim to the DOJ, the executive department within which the USMS operates, and thus, satisfied the FTCA presentment requirement for the USMS. *Cf. Scogin v. United States*, No. 12-20, 2013 WL 391164, at *3 (S.D. Tex. Jan. 30, 2013) ("As long as the claim was presented to some office or entity of DHS by the statutory deadline, the claim has been

presented to the 'appropriate Federal agency.'"). Accordingly, the Court has jurisdiction over claims asserted against the USMS.

### ii.    Assault and Burglary Claims Asserted Against the FBI

The Government further argues that the Court lacks jurisdiction over Plaintiff's causes of action for assault and burglary because "Plaintiff never raised assault or burglary as part of his administrative claim submitted to [the] FBI." Dkt. 30 at 11. Plaintiff does not respond to the Government's contention that he did not raise assault and battery in his administrative claim.

"[A] litigant may not base any part of a tort action against the United States on claims not presented to the appropriate administrative agency." *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980) (citation omitted). "A claim is properly presented within the meaning of § 2675(a) when the agency is given sufficient written notice to commence investigation and the claimant places a value on the claim." *Pleasant v. U.S. ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014) (quoting *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1442 (5th Cir. 1990)) (internal quotation marks omitted). The purpose of the presentment requirement is to "ease court congestion and avoid unnecessary litigation." *Rise*, 630 F.2d at 1071 (citation omitted). But this requirement is "in no way . . . designed to preclude [claimants] from their day in court." *Pleasant*, 764 F.3d at 450 (quoting *Transco*, 896 F.2d at 1444). Rather, this requirement is "intended to lessen the court case load through fair settlement, not procedural default." *Id.* (quoting *Transco*, 896 F.2d at 1444).

The purpose of § 2675 "will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." *Id.* (quoting *Rise*, 630 F.2d at 1071). "[T]he presentment requirement [is] one of notice, not proof." *Collins v. United States*, 996 F.3d 102, 110

14

(2d Cir. 2021). Consequently, "[a]n agency's demand for anything more than a written and signed statement setting out the manner in which the injury was received, enough details to enable the agency to begin its own investigation[,] and a claim for money damages is unwarranted and unauthorized." *Adams v. United States*, 615 F.2d 284, 292 (5th Cir. 1980). "[I]f the Government's investigation of [the plaintiff's] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." *Rise*, 630 F.2d at 1071.

Here, the claim submitted to the FBI identifies the date and time of the incident, January 15, 2021 at 6:35 a.m., and states the basis of the claim as:

> The United States through FBI Special Agent Kendrick Chumak and members from the (DHS) Department of Homeland Security,[ ]Joint Terrorism Task Force, illegally abducted the Claimant from his residence located at: 6606 Mapleshade Lane, A20, Dallas, Texas, 75252. The FBI then illegally obtained and executed a Search Warrant upon the Claimant's property and confiscated items of private property during the action. All in violation of federal statutory law, and Texas statutory law. The FBI illegally used the Patriot Act against me in retaliation to this claim.

Dkt. 1-4 at 1. Plaintiff further identifies aggravated kidnapping of a person, false imprisonment, invasion of privacy, unlawful trespass, mental anguish, intentional infliction of emotional distress, negligence, willful and wanton disregard for state and federal law, and violation of Texas election code. *Id.* Plaintiff does not identify assault or burglary in the administrative claim submitted to the FBI.

Although not expressly identified in the administrative claim, Plaintiff's claims of assault and burglary are based upon the same incident detailed above—the FBI's execution of the Arrest and Search Warrants, the seizure of Plaintiff's property, and the arrest of Plaintiff. *See* Dkt. 1 at 6–16, 18. Thus, if the Government's investigation of the above incident could have revealed potential claims of assault and/or burglary, such claims can be properly considered at this time.

Plaintiff's claim for assault is based upon the same incident identified in the administrative claim. In his factual basis, Plaintiff alleges that he was "illegally abducted . . . from his residence," indicating his belief that the basis for his arrest was illegal. *See* Dkt. 1-4 at 1. An arrest that exceeds the bounds of the law may constitute an assault. *See Davila*, 713 F.3d at 261 (explaining that under Texas law, the civil privilege defense allows a peace officer to use force that would otherwise constitute an assault if the actor reasonably believes the arrest is lawful and the force was immediately necessary to secure the arrest). Further, the allegation that an abduction occurred indicates that an unwanted physical contact likely occurred. Thus, the Government's investigation into the incident could have revealed a potential claim of assault based on Plaintiff's allegation that he was "illegally abducted," and Plaintiff should be allowed to pursue his theory of assault arising from the FBI's action of arresting Plaintiff. *See Rise*, 630 F.2d at 1071–72 (holding the plaintiff should be allowed to prosecute his case in court on theories of liability arising from the referral when the plaintiff's administrative claim put the Government on constructive notice that the referral might have been negligent); *Al-Dahir v. United States*, No. 08-4502, 2010 WL 3922177, at *2 (E.D. La. Sept. 30, 2010) (finding the plaintiff exhausted his administrative remedies for a claim of assault when the administrative claim described the execution of a search warrant but did not set forth the particular details of the assault in the administrative claim).

Plaintiff's claim for burglary is also based upon the same incident identified in the administrative claim. In his factual basis, Plaintiff alleges that during the illegal execution of the Search Warrant, the FBI "confiscated items of private property," indicating his belief that the Government unlawfully entered his property with the intent to take Plaintiff's property. *See* Dkt. 1-4 at 1. However, no reasonable investigation of these allegations could have revealed a potential theory of liability for burglary because there is no civil tort for burglary in Texas. *See supra* Section

16

III.A.1. Thus, Plaintiff's claim for burglary against the FBI should be dismissed without prejudice for failure to exhaust his administrative remedies.

**B.      Failure to State a Claim**

      **1.      Assault, Trespass, Invasion of Privacy, and False Imprisonment**

In the Complaint (Dkt. 1), Plaintiff asserts claims for assault against the FBI; trespass against the FBI and DHS; invasion of privacy against the FBI and DHS; and false imprisonment against the FBI, DHS, USMS, and DOJ. *See* Dkt. 1 at 16–17, 19–24. In the Motion (Dkt. 30), the Government argues that Plaintiffs' claims for assault, trespass, invasion of privacy, and false imprisonment should be dismissed for failure to state a claim because the Government acted pursuant to the valid Arrest and Search Warrants. Dkt. 30 at 12–17. In the Response (Dkt. 33), Plaintiff argues that the Government did not have jurisdiction in Texas to execute the Arrest and Search Warrants. *See* Dkt. 33 at 4–14; 17–20. Specifically, Plaintiff argues that Texas is outside the jurisdiction of the United States as defined in 18 U.S.C. §§ 7 and 13. *See* Dkt. 33 at 4–6.

Sections 7 and 13 are inapplicable here; Section 7 defines the term "special maritime and territorial jurisdiction of the United States" and Section 13 describes the applicability of state laws in areas within exclusive federal jurisdictions, otherwise known as federal enclaves. Texas is not a maritime jurisdiction, territory, or federal enclave; rather, Texas is one of fifty states. Accordingly, Title 18, Part II, Chapter 211 of the United States Code defines the jurisdiction of the United States to enforce its criminal laws. Specifically, 18 U.S.C. § 3231 provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Further, 18 U.S.C. § 3041 defines the power of the Court to arrest an individual charged with an offense against the United States as follows:

> For any offense against the United States, the offender may, . . . by any United States magistrate judge, . . . of any state where the offender may be found, and at the expense of the United States, be arrested and imprisoned or released as provided in chapter 207 of this title, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the office of the clerk of such court, together with the recognizances of the witnesses for their appearances to testify in the case.

> A United States judge or magistrate judge shall proceed under this section according to rules promulgated by the Supreme Court of the United States.

Pursuant to 18 U.S.C. § 3046 and Federal Rule of Criminal Procedure 4, "[i]f the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it." FED. R. CRIM. P. 4(a). "A warrant may be executed . . . within the jurisdiction of the United States or anywhere else a federal statute authorizes an arrest." FED. R. CRIM. P. 4(c)(2). Pursuant to Chapter 205, Part II, Title 18, and Federal Rule of Criminal Procedure 41, "a magistrate judge . . . must issue the warrant if there is probable cause to search for and seize a person or property." FED. R. CRIM. P. 41(d)(1). Texas is a state within the United States, and thus, the federal government of the United States has jurisdiction within Texas to enforce federal laws.

Further, Plaintiff argues that the Arrest Warrant was not validly executed in Texas because it was signed in the United States District Court for the District of Columbia. *See* Dkt. 33 at 7–9. However, pursuant to changes to the Federal Rules of Criminal Procedure, adopted in 1944, an arrest warrant issued within the district where prosecution against a defendant is pending "will have efficacy throughout the United States and will constitute authority for arresting the defendant wherever found." FED. R. CRIM. P. 4(c)(2) advisory committee's note to 1944 amendment. Thus, the Government had the authority to act on the Arrest Warrant in Texas because that is where Plaintiff was found at the time of his arrest.

Other than challenging the jurisdiction of the federal government to execute the Arrest and Search Warrants within Texas, Plaintiff does not otherwise challenge the validity of the Arrest and Search Warrants. *See* Dkt. 33 at 4–13, 17–20. Thus, to the extent that Plaintiff's claims are reliant on the Government not having the authority to execute the Arrest and Search Warrants within the State of Texas, his claims should be dismissed.

### i.    Assault

In the Complaint (Dkt. 1), Plaintiff asserts a claim for assault against the FBI. *See* Dkt. 1 at 16. In the Motion (Dkt. 30), the Government argues that Plaintiff fails to sufficiently allege facts establishing a claim for assault.[4] Dkt. 30 at 12–14. In the Response (Dkt. 33), Plaintiff relies on his argument that the Government did not have authority to execute the Arrest Warrant in Texas. *See* Dkt. 33 at 18–20. As detailed above, Plaintiff is mistaken, as the Government did have authority to execute the Arrest Warrant in Texas. *See supra* Section III.B.1. Moreover, the Court agrees with Defendant that Plaintiff's assault claim is exactly the type of conclusory allegation that cannot survive a 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions . . . will not do." (cleaned up) (citing *Twombly*, 550 U.S. at 555)).

---

[4] The Government also argues that the FBI's actions are protected by the civil privilege defense. Dkt. 30 at 12–14. The Texas civil privilege defense states:

(a) A peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or search . . . if:

(1) the actor reasonably believes the arrest or search is lawful or, if the arrest or search is made under a warrant, he reasonably believes the warrant is valid; and

(2) before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer . . . , unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested.

TEX. PENAL CODE § 9.51(a). The Fifth Circuit has held that federal law enforcement officers 'are peace officers for the purpose of the Texas criminal assault statute and its civil privilege defense' and thus, may assert the defense against an assault under Texas law. *Davila*, 713 F.3d at 261. But the defense is inapplicable unless the federal agents had a reasonable belief that the force was immediately necessary to secure an arrest or search. *Id.* at 262. The Court does not evaluate the applicability of this defense to the assault asserted by Plaintiff because the Court finds that Plaintiff has failed to state a claim for assault.

"In Texas, the intentional tort of assault is identical to criminal assault." *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009) (citing *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 649 (Tex. App—Houston [1st Dist.] 2005, pet denied)). Texas Penal Code § 22.01(a) provides, in relevant part, that a person commits criminal assault if he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ;

(2) intentionally or knowingly threatens another with imminent bodily injury . . . ; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE ANN. § 22.01(a).

Here, Plaintiff states that his claim of assault is "predicated upon the events set out in this Civil Complaint at ¶ V.(a)." Dkt. 1 at 16. Paragraph V.(a) states that "Plaintiff was assaulted . . . by the [Government] at gunpoint from his Dallas, Texas residence." *Id.* at 4. This is clearly a conclusion without any factual support. Although not specifically referenced in Paragraph V.(a), Plaintiff further identifies that his assault is set out in Paragraphs 20–26 of the Complaint (Dkt. 1). In reviewing Paragraphs 20–26, the Court can find no facts alleging a bodily injury, the threat of an imminent bodily injury, or an offensive or provocative physical contact. *See id.* at 10–12. The closest Plaintiff comes to alleging an assault in these paragraphs is the conclusory assertion that he "was assaulted by armed members from the FBI . . . and DHS." *See id.* at 12. Because the Court can find no facts supporting Plaintiff's conclusory assertion that he was assaulted, Plaintiff has failed to state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678. Thus, Plaintiff's claim of assault against the FBI should be dismissed.

###### ii. Trespass

In the Complaint (Dkt. 1), Plaintiff asserts claims of trespass against the FBI and DHS. Dkt. 1 at 17, 20. In the Motion (Dkt. 30), the Government argues that federal agents entered Plaintiff's property pursuant to the Arrest and Search Warrants and, thus, their entry was authorized by law and there can be no trespass. Dkt. 30 at 14–15. In the Response (Dkt. 33), Plaintiff argues the Government did not have statutory authority to execute the Arrest and Search Warrants in Texas. Dkt. 33 at 20.

Under Texas law, the elements of trespass are "(1) entry (2) onto the property of another (3) without the property owner's consent or authorization." *New 99 Enters., Inc. v. Matheson Tri-Gas, Inc.*, No. 05-20-626-CV, 2022 WL 1438947, at *2 (Tex. App.—Dallas May 6, 2022) (mem. op.) (citing *Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015)). "No trespass occurs when the entry is authorized as a matter of law." *Williams v. City of Dallas*, 53 S.W.3d 780, 788 (Tex. App.—Dallas 2001, no pet.) (citing *Hawkins v. Groom*, 893 S.W.2d 123, 125 (Tex. App.—Eastland 1995, no writ)).

Here, Plaintiff alleges that the "telephonic [A]rrest [W]arrant was issued by United States Magistrate Judge Robin Meriweather, District of Columbia, Case Number 1:21-mj-00058," and that "the FBI . . . obtained [the Search Warrant] from United States Magistrate Judge Kimberly C. Priest, E.D. of Texas, for Plaintiff's residence and vehicles." Dkt. 1 at 10–11. Plaintiff does not allege facts that question the validity of the Arrest and Search Warrants or that the officers exceeded the scope of the Arrest and Search Warrants. *See Williams*, 53 S.W.3d at 788. Rather, Plaintiff relies on his argument that Texas is located "outside the statutory limits" of the federal government and thus, the Government did not have statutory authority to execute the Arrest and Search Warrants in Texas. *See* Dkts. 1 at 11; 33 at 18–20. As discussed above, the Government

had authority to execute the Arrest and Search Warrants in Texas. *See supra* Section III.B.1. Because Plaintiff alleges no facts challenging the validity of the Arrest and Search Warrants and the Government did indeed have authority to execute the Arrest and Search Warrants in Texas, the Government's entry onto Plaintiff's property was authorized as a matter of law. *See Williams*, 53 S.W.3d at 788 (holding no trespass when officers entered land pursuant to a valid search warrant). Accordingly, Plaintiff's claim for trespass against the FBI and DHS should be dismissed.

### iii.    Invasion of Privacy

In the Complaint (Dkt. 1), Plaintiff asserts claims for invasion of privacy against the FBI and DHS. Dkt. 1 at 17, 20. In the Motion (Dkt. 30), the Government argues that the federal agents "were engaged in the ordinary exercise of their lawful duties, and the Complaint does not contain any allegation suggesting otherwise." Dkt. 30 at 16. In the Response (Dkt. 33), Plaintiff again relies on his argument that the Government did not have statutory authority to execute the Arrest and Search Warrants in Texas. Dkt. 33 at 18–20.

Under Texas law, "[t]he elements of a claim for invasion of privacy are (1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs; and (2) the intrusion would be highly offensive to a reasonable person." *Beaumont v. Basham*, 205 S.W.3d 608, 614 (Tex. App.—Waco 2006, pet. denied) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)). "To state a valid claim, the intrusion must be 'unreasonable, unjustified, or unwarranted.'" *Shanks v. City of Arlington*, No. 22-cv-573, 2022 WL 17835509, at *6 (N.D. Tex. Dec. 21, 2022) (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014)).

Here, Plaintiff's claim for invasion of privacy appears to be based upon his arrest and the search of his property. *See* Dkt. 1 at 6–17, 20. As laid out above, the arrest and search were pursuant to the valid Arrest and Search Warrants. *See supra* Section III.B.1. Thus, the arrest of Plaintiff and

search of his property were not unreasonable intrusions upon Plaintiff's privacy, but instead, were ordinary exercises of the federal agents' lawful duties. *See Shanks*, 2022 WL 17835509, at *6 (finding the plaintiff's state law privacy claim failed when the officers intruded on the plaintiff's privacy pursuant to an active investigation of an aggravated assault). Accordingly, Plaintiff's claim for invasion of privacy against the FBI and DHS should be dismissed.

### iv.   False Imprisonment

In the Complaint (Dkt. 1), Plaintiff asserts claims for false imprisonment against the FBI, DHS, USMS, and DOJ. Dkt. 1 at 17, 20, 22–24. In the Motion (Dkt. 30), the Government argues that "[t]he existence of a lawful warrant commanding Plaintiff's arrest nullifies his claim for false imprisonment." Dkt. 30 at 17. In the Response (Dkt. 33), Plaintiff once again relies on his argument that the Government did not have statutory authority to execute the Arrest and Search Warrants in Texas. Dkt. 33 at 18–20.

"Under Texas law, the elements of false imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law." *Roe*, 839 F. App'x at 845 (quoting *Davila*, 713 F.3d at 262). "[A]n officer acting with the authority of law does not commit false imprisonment." *Davila*, 713 F.3d at 262. Further, "[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*." *Roe*, 839 F. App'x at 845 (emphasis in original) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). "A detention under a warrant valid in form, issued by competent authority on a sufficient complaint, is not false imprisonment." *Lilley v. Minute Mkt., Inc.*, 501 S.W.2d 688, 689 (Tex. Civ. App.—El Paso 1973, writ ref'd n.r.e.) (citation omitted).

Here, Plaintiff alleges that following his arrest on January 15, 2021, he was transported to the United States Courthouse, located in Plano, Texas. Dkt. 1 at 13–14. Plaintiff alleges that he

was then surrendered to the USMS, transported to a jail in Oklahoma, and finally transported to the District of Columbia, where he remained in custody of the USMS until he was released on January 12, 2022. Dkt. 1 at 14–15. As evaluated above, Plaintiff's arrest was pursuant to the lawful Arrest Warrant. *See supra* Section III.B.1. Plaintiff's allegations regarding his detention raise no facts challenging that his detention was without legal process. Further, Plaintiff's allegations recognize that he was brought to the United States Courthouse following his arrest, presumably for an initial appearance. *See* Dkt. 1 at 14. Indeed, Plaintiff made his initial appearance before the undersigned in the United States District Court of the Eastern District of Texas on January 15, 2021. *Smocks*, No. 21-mj-33, Dkt. 2. During the initial appearance, the Government moved to detain Plaintiff and the detention and preliminary hearings were scheduled for January 21, 2021. *Id.* at Dkt. 5. The hearing was held on January 21, 2021, before Judge Christine A. Nowak, and Judge Nowak entered an order that Plaintiff should be detained pending trial. *Id.* at Dkts. 11–15. Judge Nowak further ordered that Plaintiff should be transferred to the District of Columbia for further proceedings. *Id.* at Dkt. 14. Thus, Plaintiff has failed to allege any facts indicating that the FBI, DHS, USMS, and DOJ were acting without authority of law when Plaintiff was arrested or that his detention persisted without legal process. *See Davila*, 713 F.3d at 262 (holding the federal agents did not commit the intentional tort of false imprisonment when they were acting within the authority of law); *Burks v. Price*, No. 13-cv-746, 2015 WL 3622684, at *11 (E.D. Tex. June 10, 2015) (finding the sheriff was acting with the authority of law when he had a commitment order for the plaintiff, and the plaintiff was held in jail overnight pursuant to warrants issued by the justice of the peace court). Accordingly, Plaintiff's claims for false imprisonment against the FBI, DHS, USMS, and DOJ should be dismissed.

### 2. Mental Anguish and Intentional Infliction of Emotional Distress

In the Complaint (Dkt. 1), Plaintiff asserts claims for mental anguish against the FBI, DHS, USMS, and DOJ, and intentional infliction of emotional distress against the FBI and DHS. Dkt. 1 at 18, 20–21, 23, 25. In the Motion (Dkt. 30), the Government argues that "Plaintiff cannot satisfy the high bar for stating a claim for mental anguish or intentional infliction of emotional distress." Dkt. 30 at 17. In the Response (Dkt. 33), Plaintiff argues that he establishes in the Complaint (Dkt. 1) that he was assaulted by federal agents, had a "realistic fear of being shot down" during the arrest, and that he was placed in "an open space type, jail facility with three dozen individuals that [the Government] publicly declared to be 'white supremacists.'" Dkt. 33 at 21–22. Plaintiff further argues that the Government had a duty to protect him against the assault by federal agents, the fear he experienced during the arrest, and the detention with "white supremacists." *Id.* at 22–23. The Court addresses each claim in turn.

### i. Mental Anguish

Under Texas law, "there is no general duty not to negligently inflict emotional distress." *Coleman v. Carrington Mortg. Servs., LLC*, No. 19-cv-231, 2020 WL 4723174, at *8 (E.D. Tex. July 27, 2020) (quoting *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)), *R. & R. adopted*, 2020 WL 4698099 (E.D. Tex. Aug. 13, 2020). "As such, Texas 'do[es] not recognize an independent cause of action for negligent infliction of mental anguish'; rather, '[m]ental anguish damages are recoverable when certain other legal duties are breached and the plaintiff offers a minimum quality of proof.'" *Id.* (quoting *SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 544 (Tex. 2018)) (alterations in original). Because mental anguish is a remedy, and not an independent cause of action, Plaintiff's claim for mental anguish against the FBI, DHS, USMS, and DOJ should be

dismissed.[5] *See id.* (recommending dismissal of the plaintiff's negligent infliction of emotional distress claim because Texas does not recognize a tort for negligent infliction of mental anguish).

### ii.    Intentional Infliction of Emotional Distress

Similarly, "intentional infliction of emotional distress is not available as an independent cause of action [in Texas] unless the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 63 (Tex. 1998). "Intentional infliction of emotional distress is a gap-filler tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Oberc v. Fairlane Cap. Inc.*, No. 13-cv-1010, 2015 WL 4099852, at *6 (N.D. Tex. July 2, 2015) (quoting *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)) (cleaned up). A plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Hoffmann-La Roche Inc.*, 144 S.W.3d at 447) (internal quotation marks omitted).

Here, Plaintiff has not alleged that the Government acted in a reckless manner or with intent to cause severe emotional distress. Nor does Plaintiff allege any conduct by the Government that "go[es] beyond all possible bounds of decency" such that it would be regarded as "atrocious . . . and utterly intolerable in a civilized community." *Id.* As discussed above, Plaintiff has alleged no

---

[5] This decision does not affect Plaintiff's right to recover mental anguish damages caused by the Government's breach of some other legal duty. *See C.M. v. United States*, 672 F. Supp. 3d 288, 357 (W.D. Tex. 2023) (The Texas Supreme Court specifically held that its "decision does not affect a claimant's right to recover mental anguish damages cause by defendant's breach of some other legal duty." (citing *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993))). Accordingly, to the extent Plaintiff maintains a cause of action resulting in mental anguish damages, Plaintiff can seek to recover such damages related to that cause of action.

facts that support a conclusion that the Government did not act within its official capacity at all times throughout Plaintiff's arrest and detention. *See supra* Section III.B.1. Therefore, Plaintiff's claims for intentional infliction of emotional distress against the FBI and DHS should be dismissed for failure to state a claim.

### 3.    Negligence

In the Complaint (Dkt. 1), Plaintiff asserts claims of negligence against the FBI, DHS, USMS, and DOJ. Dkt. 1 at 18–19, 22–23, 25. In the Motion (Dkt. 30), the Government argues that "Plaintiff has failed to plead facts which establish any of these required elements, but most importantly, he has failed to plead the element of duty." Dkt. 30 at 20. In the Response (Dkt. 33), Plaintiff argues that the Government "had a legal duty to protect . . . Plaintiff from fear of death or injury, and in all instances [the Government] breached its duty." Dkt. 33 at 21.

In Texas, "negligence consists of three essential elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damages proximately caused by the breach." *Green v. United States*, No. 18-cv-631, 2020 WL 1312941, at *7 (E.D. Tex. Feb. 28, 2020) (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)), *R. & R. adopted*, 2020 WL 1309994 (E.D. Tex. Mar. 19, 2020). "The threshold inquiry in a negligence case is duty. . . . [T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017) (quoting *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)) (omission and alteration in original). If there is no duty, there can be no negligence.

Plaintiff has failed to allege that the Government breached a legal duty owed to him. Plaintiff, relying on *Logan v. United States*, 144 U.S. 263, 284 (1892), argues that the Government

had an affirmative duty to protect him from "fear of death or injury" while he was a prisoner. *See* Dkt. 33 at 21–22. In *Logan*, the Supreme Court explained the duty as follows:

> The prisoners were in the exclusive custody and control of the United States, under the protection of the United States, and in the peace of the United States. There was a co-extensive duty on the part of the United States to protect against lawless violence persons so within their custody, control, protection, and peace; and a corresponding right of those persons, secured by the constitution and laws of the United States, to be so protected by the United States. If the officers of the United States, charged with the performance of the duty, in behalf of the United States, of affording that protection and securing that right, neglected or violated their duty, the prisoners were not the less under the shield and panoply of the United States.

*Logan*, 144 U.S. at 285. Indeed, this duty to protect is imposed by the Eighth Amendment of the Constitution, which prohibits cruel and unusual punishments. "But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Significantly, this duty does not include protecting prisoners from *fear* of death or injury. Indeed, a general fear of injury does not state a claim upon which relief may be granted. *See Adams v. Collier*, No. 21-cv-261, 2022 WL 456535, at *6–7 (E.D. Tex. Jan. 19, 2022) (finding that the plaintiff's expressed general fear of being attacked was "not sufficient to indicate that prison officials possessed knowledge suggesting that [the plaintiff] faced substantial risk of serious harm" and thus, did not implicate the duty imposed by the Eighth Amendment), *R. & R. adopted*, 2022 WL 446748 (E.D. Tex. Feb. 14, 2022).

Here, Plaintiff has only alleged facts that potentially raise a general fear of injury. *See* Dkt. 1 at 15 ("The [Government's] conduct in placing Plaintiff, being a black man[,] in the same quasi dormitory environment with three dozen 'white supremacists' created a dangerous or deadly environment for the Plaintiff."). In any event, even if the Government had the affirmative duty to

protect Plaintiff from a general fear of death or injury, this duty arises under the Eighth Amendment and cannot be remedied under the FTCA. *See Gonzalez*, 2015 WL 13345624, at *7 ("[T]he FTCA does not waive federal sovereign immunity for a constitutional tort." (citing *Meyer*, 510 U.S.at 478)).

Further, Plaintiff has pleaded no facts indicating duty, breach, or injury while in the custody of the Government. In the Complaint (Dkt. 1), Plaintiff alleges threadbare, conclusory, vague, and unspecific assertions that "this [c]ause of action arises out of negligence" and "BUT FOR, the negligence . . . of the [Government], . . . Plaintiff would not have suffered injuries upon his person and property." *See* Dkt. 1 at 6. These allegations are not enough to state a claim upon which relief can be granted, and the Court can find no other facts in the Complaint (Dkt. 1) that would move Plaintiff's claim across the line from conceivable to plausible. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (cleaned up)). Accordingly, Plaintiff has failed to state a claim for negligence under the FTCA. Therefore, Plaintiff's claims for negligence against the FBI, DHS, USMS, and DOJ should be dismissed for failure to state a claim.

### 4.    Personal Property Damage

In the Complaint (Dkt. 1), Plaintiff asserts a claim for personal property damage against the FBI. *See* Dkt. 1 at 16. In the Motion (Dkt. 30), the Government argues that this claim is "simply not [a] tort[] recognized by Texas law and [is] pleaded too vaguely to conceivably state a claim upon which relief can be granted." Dkt. 30 at 23. Plaintiff does not respond to the Government's argument regarding these claims.

Plaintiff's claim for personal property damage against the FBI could be interpreted to be either conversion or trespass to chattels. Under Texas law, "[c]onversion is the unauthorized and unlawful exercise of dominion and control over the personal property of another to the exclusion of and inconsistent with the owner's rights in the property." *Armstrong v. Benavides*, 180 S.W.3d 359, 363 (Tex. App.—Dallas 2005, no pet.) (first citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971); and then citing *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39 (Tex. App.—Dallas 2003, pet. denied)). Similarly, "trespass to chattels is a wrongful interference with or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time." *Id.* (citing *Omnibus Int'l, Inc. v. AT&T, Inc.*, 111 S.W.3d 818, 826 (Tex. App.—Dallas 2003, pet. granted, judgm't vacated w.r.m.)). The only facts alleged by Plaintiff that indicate control or injury to Plaintiff's personal property are his allegations that "a number of items were subsequently removed from the residence without consent from the Plaintiff." Dkt. 1 at 13. However, as discussed above, the Government entered Plaintiff's residence and removed the property pursuant to the valid Search Warrant. *See supra* Section III.B.1.b. Accordingly, Plaintiff's claim for personal property damage against the FBI should be dismissed for failure to state a claim.

### 5.    Leave to Amend

A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* While leave to amend should be "freely given, that generous standard is tempered by the

necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). Thus, "[g]ranting leave to amend is not required . . . if the plaintiff has already pleaded his 'best case.'" *Id.* at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 20-cv-948, 2021 WL 2232052, at *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021).

In the present case, this is the first time the Court has addressed the sufficiency of Plaintiff's claims. Thus, to the extent that Plaintiff can amend the Complaint (Dkt. 1) to state a claim, he should be given leave to do so. The Court finds that Plaintiff may be able to amend his pleadings to sufficiently state a claim for assault, intentional infliction of emotional distress, negligence, and personal property damage because these claims were dismissed due to Plaintiff's insufficient factual allegations. *See supra* Section III.B.1.i., 2.ii–4. However the Court finds that permitting Plaintiff to amend the remainder of his claims would be futile because the Court either lacks subject matter jurisdiction, *see supra* Section III.A., or the claims failed as a matter of law, *see supra* Section III.B.1.ii.–2.i. Thus, the Court recommends that Plaintiff be given leave to amend the Complaint (Dkt. 1) to plead his best case as to his claims for assault, intentional infliction of emotional distress, negligence, and personal property damage.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion (Dkt. 30) be **GRANTED**.

The Court further recommends that Plaintiff's claims for aggravated kidnapping, burglary, violations of the Texas Election Code, creation of a dangerous and deadly environment, willful

and wanton disregard for state and federal law, and violations of Texas and federal statutory law be **DISMISSED WITHOUT PREJUDICE** due to lack of subject matter jurisdiction.

The Court further recommends that Plaintiff's claims for trespass, invasion of privacy, false imprisonment, and mental anguish be **DIMISSED WITH PREJUDICE**.

The Court further recommends that Plaintiff's claims for assault, intentional infliction of emotional distress, negligence, and personal property damage be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiff be given leave to file an amended complaint on these claims no later than fourteen (14) days after the entry of the Memorandum Adopting Report and Recommendation, if any. If Plaintiff fails to timely file an amended complaint, Plaintiff's claims for assault, intentional infliction of emotional distress, negligence, and personal property damage should be dismissed with prejudice.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 2nd day of July, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE